IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **SUSAN, L[1]**, <br><br>   Plaintiff, <br><br>  v. <br><br>**ANDREW M. SAUL,** Commissioner of Social Security, <br><br>   Defendant. | Case No. 3:19-cv-2070-SI <br><br> **OPINION AND ORDER** |

Jeffrey H. Baird, DELLERT BAIRD LAW OFFICES, PLLC, 6525 California Avenue S.W. #101, Seattle, WA 98136. Of Attorneys for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Sarah E. Moum, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

   Susan L. (Plaintiff) seeks judicial review of the final decision of the Commissioner of the

Social Security Administration (Commissioner) denying her application for Disability Insurance

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

Benefits (DIB) under Title II of the Social Security Act (Act).[2] For the following reasons, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it follows the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and the Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

---

[2] The Commissioner granted her application for Supplemental Security Income (SSI) under Title XVI of the Act.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff first filed applications for DIB and SSI on June 23rd, 2010. AR 219. Those applications were denied at first and upon reconsideration. AR 219-20. In response, Plaintiff requested and received an appeal hearing before Administrative Law Judge ("ALJ") John Bauer, who, in a decision dated July 27, 2012, found Plaintiff not to be disabled. AR 139. In May 2014, Plaintiff requested a review of the ALJ's decision from the Appeals Council ("AC"). AR 25. The AC denied Plaintiff's request and the ALJ's decision became the final decision of the Commissioner. *Id*; *see also* 20 C.F.R. § 422.210(a).

Plaintiff filed new applications for DIB and SSI on July 18, 2014[3], alleging disability beginning on July 27, 2012 due to the following: degenerative disc disease, deep vein thrombosis, sciatica, hepatitis C, tendinitis, fibromyalgia, arthritis, carpal tunnel syndrome, bipolar II disorder, and post-traumatic stress disorder ("PTSD"). AR 147-48; AR 159-60. The Commissioner denied Plaintiff's applications initially and upon reconsideration. AR 25. In response, Plaintiff requested a hearing before an ALJ to appeal the Commissioner's decision. *Id*. In a decision dated September 7, 2016, ALJ S. Pines granted Plaintiff's applications for DIB and SSI, finding a disability onset as of July 27, 2012 for both claims. *Id*.

The AC, upon review of ALJ Pines' decision, reversed. Specifically, the AC found that the ALJ's decision did not meet the requirements of Acquiescence Ruling 97-4(9) (Ruling 97-4(9)). AR 220. Ruling 97-(4)9 requires that when there has been an earlier unfavorable hearing decision, there is a presumption of continuing non-disability that a claimant must rebut in a subsequent application by showing a change in circumstances. AR 220. In the subsequent

---

[3] The SSA applied the protective filing date of October 5, 2012 to the DIB claim.

PAGE 3 – OPINION AND ORDER

hearing, the ALJ must adopt the findings from the final decision on the previous claim, unless there is new and material evidence relating to a particular finding or there has been a change in the law, regulations, or rulings affecting the finding or the method for arriving at the finding. *Id.*; Ruling 97-4(9); *see also Chavez v. Bowen*, 844 F.2d 691 (9th Cir. (1988)). Because the AC found that ALJ Pines' (the second ALJ) decision contained an error of law and the findings and conclusions were not supported by substantial evidence, the AC remanded the case for further proceedings. AR 219.

The hearing upon remand took place before ALJ Pines on December 10, 2018. AR 26. Plaintiff requested, and the ALJ accepted, an amended alleged onset of disability date of September 1, 2012. Plaintiff, born July 27, 1959, was 53 years old as of that date. AR 368. The ALJ, in a decision dated January 29, 2019, found that Plaintiff became disabled as of July 26, 2014. The ALJ determined that Plaintiff's date last insured was September 13, 2013. Thus, the ALJ concluded that Plaintiff was disabled under her SSI claim but that she was not disabled under her DIB claim. AR 40-41. The AC denied Plaintiff's request for review of the ALJ's DIB determination, making the ALJ's decision the final decision of the Commissioner. AR 1-3. Plaintiff seeks review of that decision. The Court has jurisdiction under 42 U.S.C. § 405(g).

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in

> significant numbers in the national economy? If so, then the claimant is
> not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),
> 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or
> she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

The ALJ first determined that Plaintiff met the insured status requirements under the Act through September 30, 2013 for the DIB claim. AR 29. The ALJ then performed the sequential analysis as noted above. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity after the alleged disability onset date. AR 29. At step two, the ALJ determined that Plaintiff has the following list of severe impairments: chronic venous thrombosis; obesity; degenerative disc disease; an affective disorder; and a trauma disorder. AR 29-30. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that

meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404. AR 30.

The ALJ next determined Plaintiff's RFC. The ALJ concluded that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with these limitations: Plaintiff can stand and walk for six hours; Plaintiff can sit for six hours; Plaintiff can occasionally climb ramps and stairs; Plaintiff can occasionally balance, stoop, kneel, crouch, and crawl; Plaintiff should have no exposure to hazards; and Plaintiff is limited to simple, routine work. AR 32. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. AR 38. At step five, the ALJ considered Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert. Based on those considerations, the ALJ found that, before the established onset of disability, Plaintiff could perform jobs, such as agriculture produce sorter, cashier, or outside delivery driver, that existed in the national economy and that Plaintiff had been able to work before July 26, 2014. AR 39-40. The ALJ noted that Plaintiff's age category changed on July 26, 2014 and found that after that date no jobs existed in significant numbers in the national economy that Plaintiff could perform. *Id.* Based on Medical-Vocational Rule 202.06, the ALJ found that Plaintiff became disabled on July 26, 2014. AR 40. Before July 26, 2014, however, Plaintiff was not disabled. *Id.* Accordingly, Plaintiff's SSI application was granted with a disability date of July 26, 2014. Plaintiff's DIB application was denied because Plaintiff's date last insured was before the disability date. AR 40-41.

## DISCUSSION

Plaintiff argues that the ALJ made a threshold error of mixing up Plaintiff's debilitating condition of "chronic venous insufficiency" with her nondebilitating condition of "deep venous thrombosis." Plaintiff asserts this misunderstanding infected the ALJ's opinion and mistaken analysis, rendering his opinion unsupported by substantial evidence. Plaintiff also argues that the

ALJ erred by: (1) finding that fibromyalgia was not a medically determinable impairment at step two of the sequential analysis; (2) improperly discounting Plaintiff's testimony regarding her limitations caused by chronic venous insufficiency (or thrombosis); and (3) finding that the opinion of the testifying medical consultant was entitled to great weight.

**A. Plaintiff's Leg Condition**

Plaintiff argues that the ALJ's characterization of her condition as "chronic venous thrombosis" and "deep venous thrombosis" rather than "chronic venous insufficiency" renders the ALJ's findings on Plaintiff's leg condition erroneous. Plaintiff argues that if the Court accepts this alleged mischaracterization and recasts Plaintiff's condition as "chronic venous insufficiency," then any of the ALJ's findings about her "chronic venous thrombosis" is not relevant to Plaintiff's actual debilitating condition.

As the Commissioner points out, however, the terminology the ALJ used to describe Plaintiff's leg condition is the same terminology used by Dr. James P. Craven, a vascular specialist that diagnosed Plaintiff with "deep vein thrombosis of lower limb," characterizing it as "chronic venous thrombosis." AR 1049. It is reasonable that the ALJ would choose to use the same terminology that Plaintiff's vascular specialist used. Moreover, at least one other court has weighed in on a similar semantic controversy and found it to be of little practical import. *See Garcia v. Astrue*, 2012 WL 13716, at *11 n.17 (January 3, 2012) ("Although Plaintiff framed the step 2 issue in terms of 'venous insufficiency,' the medical evidence relating to the condition of Plaintiff's right leg refers to 'venous thrombosis.' Plaintiff uses the terms interchangeably in his briefing and appears to assume that that venous thrombosis is a type of venous insufficiency. . . . [T]his assumption appears to be consistent with widely-accepted medical authorities." (citations omitted)). The Court rejects Plaintiff's argument that the ALJ's characterization renders his finding erroneous.

### B. Plaintiff's Fibromyalgia at Step Two

Plaintiff contests the ALJ's finding that her fibromyalgia was not a medically determinable impairment at step two of the sequential analysis. The ALJ briefly considered Plaintiff's fibromyalgia during his discussion of alleged impairments during the step two analysis. He found that "the record does not show the claimant met the criteria for a medically determinable impairment of fibromyalgia as described in [Social Security Ruling] SSR 12-2p." AR 30. The ALJ did not again mention Plaintiff's fibromyalgia or related symptoms during his formulation of Plaintiff's RFC.

The step two inquiry is a *de minimis* screening device to dispose of groundless claims. *Yuckert*, 482 U.S. at 153-54. The claimant bears the burden of establishing that she has a severe impairment at step two by providing medical evidence. 20 C.F.R. §§ 404.1512; 416.912. Fibromyalgia can be established as a medically determinable impairment under either SSR 12-2p §§ II.A or II.B:

> § II.A: (1) A history of widespread pain . . . in all quadrants of the body . . . that has persisted for at least three months; (2) at least 11 positive tender points on physical examination; and (3) evidence that other disorders that could cause the symptoms or signs were excluded.
>
> § II.B: (1) A history of widespread pain (see section II.A.1.); (2) Repeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems (fibro fog), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and (3) evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded (see section II.A.3.).

SSR 12-2p §§ II.A.; II.B.

An impairment or combination of impairments is "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability

PAGE 9 – OPINION AND ORDER

to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis in original) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 2005)). The ALJ must consider the combined effect of all a claimant's impairments on his or her ability to function. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). If the ALJ determines that a claimant has a severe impairment at step two, the ALJ continues with the sequential analysis, considering all of the claimant's limitations, severe or not. SSR 96-9p. If an ALJ does not consider limitations imposed by an impairment at step two but considers them at a later step in the sequential analysis, any error at step two is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Burch v. Barnhart*, 400 F.3d at 682. If an ALJ fails properly to consider the longitudinal record of fibromyalgia, however, it may undermine all of an ALJ's findings. *See Revels v. Berryhill*, 674 F.3d 648, 652 (9th Cir. 2017) (reversing ALJ's findings on claimant's subjective testimony, weight granted to treating physician, weight granted to treating non-acceptable medical source, and third-party evidence and remanding for immediate payment of benefits).

Plaintiff argues that the ALJ's analysis is not supported by substantial evidence in the record. In his analysis, the ALJ noted that "the record shows several providers diagnosed [Plaintiff] with fibromyalgia." AR 30. The ALJ outlined the criteria set forth in SSR 12-2p and found that Plaintiff failed to meet one of the requirements, concluding that "the record does not show that evidence that other disorders that could cause the signs or symptoms attributed to fibromyalgia were excluded." This conclusion represents the full scope of the ALJ's analysis. He did not reference the record or offer evidence to support or explain his finding. Moreover, the ALJ's finding contradicts objective medical evidence in the record. The record contains the lab results of blood-tests that returned negative results for lupus (negative ANA) and rheumatoid

arthritis (although rheumatoid factor was found, medical sources concluded that rheumatoid arthritis was unlikely in Plaintiff (negative ccp, ccr)). AR 836-37. These results are incongruous with the ALJ's findings. *See* SSR 12-2p § II.A.3 (noting that negative test results for rheumatoid factor and anti-nuclear antibodies are common forms of evidence that rule out other disorders that could account for fibromyalgia symptoms). In sum, the ALJ failed properly to consider the longitudinal record of Plaintiff's fibromyalgia and the ALJ's conclusion that the record does not show evidence that other disorders could be excluded is not supported by substantial evidence. Thus, the ALJ erred in finding that fibromyalgia was not a medically determinable impairment.

The Commissioner argues that any error made by the ALJ on the issue of Plaintiff's fibromyalgia at step two is harmless for two reasons. First, the Commissioner argues that Plaintiff is unable to show that fibromyalgia is a medically determinable impairment under either of the criteria of SSR 12-2p. Second, the Commissioner argues that the ALJ considered Plaintiff's limitations from fibromyalgia during his analysis. The Commissioner also argues that the doctrine of *res judicata* bars Plaintiff's step two argument.

An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *see also Robbins*, 466 F.3d at 885 (noting that an error is harmless if it is "clear from the record the error was inconsequential to the ultimate non-disability determination"). A court should not automatically reverse on account of error but should make a determination of prejudice. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). "Determination of prejudice requires 'case-specific application of judgment, based upon examination of the record,' not 'mandatory presumptions and rigid rules.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

The Court agrees with the Commissioner that the ALJ sufficiently considered Plaintiff's limitations allegedly caused by her fibromyalgia. The ALJ considered Plaintiff's pain, her taking of pain medication, and the exacerbation of her pain caused by her obesity. The ALJ also incorporated some limitations into the RFC relating to these impairments. An error is harmless so long as the ALJ still considers all the claimant's functional limitations in the remaining steps of the analysis (including those caused by the omitted severe impairments). *Lewis*, 498 F.3d at 911. Because the Court finds that the ALJ's error was harmless on this ground, the Court does not reach the Commissioner's other harmless error arguments.

## C. Plaintiff's Testimony

### 1. Standards

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the

complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

### 2. Discussion

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, thereby satisfying step one of the analysis. AR 33. The ALJ next determined, however, that Plaintiff's statements on the intensity, persistence, and limiting effects of the symptoms were not fully supported by substantial evidence in the record. The ALJ found that Plaintiff's subjective complaints were undermined by evidence that she received only conservative treatment, by inconsistencies between her testimony and other evidence in the record, and by her daily living activities.

#### a. Conservative treatment

Routine, conservative treatment can be enough to discount a claimant's subjective testimony related to the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

The ALJ discounted Plaintiff's testimony regarding a debilitating impairment during the relevant time from her deep vein thrombosis because Plaintiff's treating doctor recommended

only aspirin, daily exercise, and a compression sock. Plaintiff's doctor did not recommend more aggressive treatment such as ablation or surgery. The ALJ discounted Plaintiff's testimony of a debilitating impairment during the relevant time from her degenerative disc disease because her treatment consisted of pain medication, muscle relaxants, and physical therapy. Additionally, there was no evidence she was receiving regular treatment from an orthopedist or neurologist, nor that she was recommended or received spinal surgery, injection therapy, or specialized pain management.

Plaintiff's arguments in response to this focus on the ALJ's statement that Plaintiff was noncompliant in using the compression hose. Noncompliance, however, is a different reason to discount Plaintiff's testimony. Even assuming Plaintiff is correct that the ALJ erred in relying on Plaintiff's noncompliance, the ALJ also specifically discussed the fact that Plaintiff's medical providers did not recommend a more aggressive treatment for her allegedly disabling leg (and back, to which Plaintiff does not respond) conditions during the relevant time. That is a clear and convincing reason to discount Plaintiff's testimony that her deep vein insufficiency and degenerative disc disease were disabling before September 30, 2013.

### b. Inconsistences with the record

The ALJ identified several "inconsistencies" between Plaintiff's testimony at the hearing or in her function reports and other evidence in the record related to her limitations from chronic venous thrombosis. Plaintiff argues that these purported inconsistencies were not specific enough to provide clear and convincing reasons to discount Plaintiff's testimony.

As the ALJ noted, Plaintiff testified that she needed to elevate her legs often throughout the day. AR 98. The ALJ found this testimony to be inconsistent with the record, citing to a single instance in the record where a medical provider included the following in the progress notes from a 2016 appointment: "[Plaintiff] sleeps on a sofa and 'occasionally' elevates her

legs." AR 34; AR 1307. Plaintiff argues that this evidence is not specific and that the testimony is not necessarily in conflict because there would be little reason for Plaintiff to elevate her legs more than occasionally if she were lying down, as the report quoted by the ALJ might suggest.

Plaintiff interprets her report to mean *while* she lays on a sofa, she occasionally elevates her leg, which is not necessarily inconsistent with her testimony that she regularly elevates her leg. The ALJ appears to have interpreted the report to mean that Plaintiff both lays on a sofa *and* occasionally elevates her leg, which is inconsistent with her testimony that she regularly elevates her leg. Both interpretations are reasonable. When evidence is susceptible to more than one rational interpretation, the Court must uphold the reasonable interpretation of the ALJ. *Batson*, 359 F.3d at 1193.

### c. Daily living activities

The ALJ noted that "the record shows the claimant engaged in activities that are inconsistent with her allegations and testimony" on her limitations related to her chronic venous thrombosis (among her other physical impairments). AR 35. Those activities included cleaning her father's house, caring for her aging father, going to the store, and volunteering at Clackamas Food Bank. *Id.* An ALJ can use daily activities to form a valid basis for adversely evaluating a plaintiff's subjective symptom testimony on either of two grounds: (1) a plaintiff's activities contradict her testimony; or (2) a plaintiff's activities meet the threshold for transferable work skills.

The ALJ noted that Plaintiff's report that she cleaned her father's house conflicts with her testimony that she does not do her own housecleaning and that her father and brother come to her house to help her clean it. *Id.* (citing AR 1032; AR 100). Plaintiff cites *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017), to support her argument that the record does not provide enough detail about what the housecleaning activity entailed to support an adverse evaluation of

PAGE 15 – OPINION AND ORDER

her testimony. In *Trevizo*, the court rejected the ALJ's finding that a plaintiff's ability to care for her children undermined her claimed limitations. *Id.* at 682 ("[T]here is almost no information in the record about Trevizo's childcare activities; the mere fact that she cares for small children does not constitute an adequately specific conflict with her reported limitations.").

Plaintiff's cleaning of her father's house is analogous to the childcare activities in *Trevizo*. The record does not provide any detail about what Plaintiff did when she cleaned her father's house in 2014. Plaintiff suggested in her testimony that she only does laundry while cleaning her own house, but does not "do any other thing, like vacuuming or anything like that, my brother helps me *and my dad*." AR 99-100 (emphasis added). The ALJ did not develop the record on the extent of the activity performed by Plaintiff in cleaning, nor how often such activity took place (the record suggests it was a single, isolated occurrence). Nor did the ALJ inquire if Plaintiff cleaned her father's house alone or alongside her brother or father, as her testimony suggests was the case at her own house. Absent more details about Plaintiff's house cleaning, that task does contradict Plaintiff's testimony regarding her limitations.

The same reasoning applies to the ALJ's findings on the remaining activities by Plaintiff on which the ALJ relied. For each activity, the ALJ provided insufficient detail and explanation to support that the activity is inconsistent with Plaintiff's testimony regarding her limitations. Further, the level of activity does not show that Plaintiff was engaged in anything other than certain routine activity, which is insufficient to provide a clear and convincing reason to discount subjective testimony. *See Molina*, 674 F.3d at 1113 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has

PAGE 16 – OPINION AND ORDER

repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Because the ALJ's findings were not supported by substantial evidence, Plaintiff's daily activities are not a valid basis to discount her subjective symptom testimony. Nonetheless, because the ALJ provided other clear and convincing reasons to discount Plaintiff's subjective testimony regarding her limitations, the ALJ's assessment of Plaintiff's testimony is affirmed.

### D. Medical Consultant Opinion

Plaintiff argues that the ALJ erred in relying on the medical testimony of the non-examining medical consultant who testified at the hearing, Dr. Clarke.[4] Plaintiff contends that the medical consultant's opinion is not supported by substantial evidence and, thus, the ALJ should not have afforded it great weight.

The medical consultant testified at Plaintiff's hearing as a reviewing medical expert regarding physical limitations. AR 58-68. He stated that Plaintiff was mainly limited by her weight, drug use, and poor conditioning. AR 61-63. He suggested that Plaintiff should not drive, use ladders or scaffolds, or be near machinery. AR 62. Finally, he opined that Plaintiff should be limited to light work. AR 63. The ALJ gave great weight to the medical consultant's opinion,

---

[4] The parties do not reference Dr. Clarke by name, and the court reporter spelled his name phonetically, so the Court will follow the parties' example and identify him as the "medical consultant."

noting that, as an expert witness, he knew about the disability program and had full access to all the medical evidence in the record. AR 36. The ALJ also noted that the medical consultant's opinion accorded with other evidence in the record, including objective medical evidence. *Id.*

As the Commissioner argues, this Circuit's precedent generally focuses on the reasons an ALJ must provide for rejecting medical testimony, or for weighing one doctor's opinion more than another's. *See, e.g.*, *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (stating that to "reject the uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence" (simplified)); *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (stating that generally "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's"). Plaintiff does not argue that the medical consultant's opinion conflicts with the opinion of any examining or treating source, or that the ALJ should have given greater weight to another medical source. Indeed, as noted by the ALJ, the medical consultant's opinion reflected the opinions of agency reviewing doctors Thomas Davenport, M.D. and Leslie Arnold, M.D. Plaintiff simply disagrees with the ALJ's assessment. That is not a sufficient basis on which to assign error.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled before July 26, 2014 is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 29th day of March, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge